UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL I. GRENTZEL,

    Plaintiff,                                                    Civil Action No. 06-10997

v.                                                                        HON. PAUL V. GADOLA
                                                         U.S. District Judge
                                                         HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL                             U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

       Plaintiff Carol Grentzel brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

**PROCEDURAL HISTORY**

       On December 10, 2002, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging an onset of disability date of January 18, 1997 (Tr. 41-43). After the initial denial of her claim, Plaintiff filed a request for an administrative hearing, held on

January 27, 2005 in Oak Park, Michigan before Administrative Law Judge (ALJ) Patrick Golden. Plaintiff, represented by attorney James M. O'Reilly, testified (Tr. 280-289). Lawrence Zatkin, a Vocational Expert ("VE") also testified (Tr. 290-291). On April 22, 2005, the ALJ found that although Plaintiff was unable to perform her past work as an advertising salesperson, she retained the ability to perform her past relevant work as an office clerk (Tr. 23(J)). On January 4, 2006, the Appeals Council denied review (Tr. 4-6). Plaintiff filed for judicial review on March 8, 2006.

## BACKGROUND FACTS

Plaintiff, born May 3, 1950, was age 54 when the ALJ issued his decision (Tr. 23(J)). She completed 12th grade and worked formerly as an office clerk and as an advertising salesperson (Tr. 48, 53). Plaintiff alleges disability due to Epstein-Barr; headaches; fibromyalgia; fatigue; arthritis; low back and right leg pain; chronic anxiety; and clinical depression (Tr. 47).

### A.     Plaintiff's Testimony

Plaintiff testified that fatigue and arthritis obliged her to cease work in 1997 (Tr. 281). Plaintiff stated that she experienced arthritis in her neck, hands, lower back, and knees, adding that her joints "lock[ed] up" if she remained in one position for any length of time (Tr. 281). She reported that she currently took Mobic for Chronic Fatigue Syndrome ("CFS") (Tr. 281). She indicated that she had difficulty walking but continued to drive short distances (Tr. 281). Testifying that she did not "do a whole lot around the house," Plaintiff admitted that she continued to groom and dress herself; read the newspaper; and visit with

-2-

friends on the telephone (Tr. 282). She reported that she visited her rheumatologist every four months (Tr. 282).

Plaintiff stated that she was first diagnosed with CFS in 1997 (Tr. 282). She indicated that CFS also created concentrational difficulties, adding that her testimony was compromised by her inability to focus as well as from back pain (Tr. 282). She testified that despite sleeping for 10 to 12 hours each day, she still experienced fatigue (Tr. 283). She reported back surgery but denied knee or neck surgery (Tr. 285-286). She stated that in addition to Mobic, she took two arthritis medications along with medications for hypothyroidism, Prozac, Wellbutrin, and Premarin (Tr. 286). She testified that she experienced the side effects of blurred vision and poor concentration (Tr. 286). She alleged that she could concentrate for no more than 45 minutes to an hour before experiencing physical and mental exhaustion (Tr. 288).

### B.  Medical Evidence

#### 1. Treating Sources

In May, 1995, Marcia Johnson, M.D., noted that Plaintiff complained of fatigue (Tr. 258). In January, 1997, Plaintiff reported that she experienced a "flare-up" of back pain following a car accident at the beginning of the month (Tr. 249). April, 1998 treating notes indicate that Plaintiff had been "relatively active" (Tr. 242). In August, 2000, Plaintiff described her condition as "fair" (Tr. 235). Johnson commented in January, 2001 that Plaintiff's fibromyalgia was "manageable" (Tr. 229). In September of the same year, Plaintiff reported that her condition was "fair," but noted that Vioxx was helpful (Tr. 229).

In July, 2002, Plaintiff reported fatigue, aching, and trouble concentrating, but admitted that she was "[s]till quite active in maintaining her home" (Tr. 224). In November, 2002, Plaintiff began a course of physical therapy (Tr. 213). Plaintiff reported that she was able to "work out" neck stiffness by taking a warm shower (Tr. 210). At another session, she attributed low back pain to "a long distance" drive the day before (Tr. 209). A December, 2002 discharge report states that Plaintiff felt 70 to 80 percent better since beginning treatment (Tr. 207).

In February, 2003, Dr. Johnson opined that fibromyalgia, CFS, and early rheumatoid arthritis precluded all employment "[a]t the present time . . . and for the foreseeable future" (Tr. 221).[1] In January, 2005, Dr. Johnson testified at a deposition, noting that Plaintiff had first exhibited signs of CFS and fibromyalgia in 1995 (Tr. 264-265). Dr. Johnson added that she had "found positive tender point testing" the same year (Tr. 266). Stating that fibromyalgia was "a very difficult condition to treat," Johnson reported that she had prescribed a number of anti-depressants in an effort to "alleviate the muscle pain seen with fibromyalgia," but none had yielded more than minimal relief (Tr 267). Referring to her treating notes, Johnson stated that Plaintiff reported worsening symptoms in 2001, adding that in July, 2002, she complained of greater joint pain and cognitive difficulties (Tr. 268).

---

[1] Mark Soverinsky, M.D. treated Plaintiff for mental health issues between August, 2001 and September, 2002 (Tr. 204-206). However, as noted by ALJ Golden, Soverinsky's notes are almost completely illegible.

Based on Plaintiff's complaints, Johnson opined that Plaintiff was unable to perform her former work as either an office clerk or advertising salesperson (Tr. 271).

### 2. Consultive Sources

A Psychiatric Review Technique ("PRT") completed in March, 2003 found that Plaintiff experienced both affective and anxiety-related disorders (Tr. 104). The report found the absence of "B" criteria limitations with the exception of moderate deficiencies in concentration, persistence, or pace (Tr. 114). A Mental Residual Functional Capacity Assessment performed on the same day found that Plaintiff experienced a moderately limited ability to understand and remember detailed instructions; carry out detailed instructions; and maintain attention and concentration for extended periods (Tr. 118). The report also stated that Plaintiff retained a moderately limited ability to "set realistic goals or make plans independently of others" (Tr. 119). The assessment found the absence of other significant limitations, concluding that Plaintiff retained the ability to perform "simple, unskilled tasks on a sustained basis" (Tr. 120).

A Physical Residual Functional Capacity Assessment performed the same month found that Plaintiff retained the ability to lift 20 pounds occasionally; 10 pounds frequently; and stand, walk, or sit for six hours in an eight-hour workday, as well as an unlimited ability to push or pull (Tr. 125). The assessment limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 126). The report found the absence of manipulative, visual, communicative, or environmental limitations, concluding that although Plaintiff reported a worsening of her condition in July, 2002, she continued to remain "quite

active" (Tr. 126, 127-128).

### C. Vocational Expert Testimony

VE Lawrence Zatkin classified Plaintiff's former work as semiskilled at the sedentary level of exertion (Tr. 290). He opined that if poor concentration interfered with Plaintiff's former work on a consistent basis, she would be deemed incapable of performing her job (Tr. 291).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Golden found that Plaintiff experienced the severe impairments of fibromyalgia and CFS, but that neither condition met or medically equaled the listed impairments found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 23(I)).

The ALJ found the existence of a mental impairment, but noted it created only mild limitations in her activities (Tr. 23(E)). The ALJ found that Plaintiff retained the following residual functional capacity (RFC), allowing her to

> "lift 10 pounds occasionally; lift 10 pounds frequently; sit, stand, or walk for eight hours in a work day; push or pull without limitation; perform postural activities occasionally; perform manipulative functions; see, hear, and speak without limitation; and perform work in any environment. Mentally, the claimant can understand, remember and carry out somewhat instructions such as those inherent to semiskilled work; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting"

(Tr. 23(I)).

ALJ Golden concluded that Plaintiff retained the capacity to perform her former work as an office clerk (Tr. 23(J)). He found Plaintiff's allegations of complete disability "less

than fully credible," citing her continued involvement in home arts and crafts; extensive garden club activities; and a 2002 admission that she was "too busy" to maintain an at-home course of physical therapy (Tr. 23(G). The ALJ also noted that Plaintiff admitted walking her dog for 45-60 minutes and remained "quite active" in maintaining her home (Tr. 23(G)).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

**A.  SSR 99-2p**

Plaintiff argues first that she met the criteria set forth in SSR 99-2p necessary to establish the presence of CFS, submitting that a remand should be granted on that basis. On a related note, Plaintiff argues that the ALJ erred in rejecting Dr. Johnson's opinion that she was disabled from all gainful employment. *Plaintiff's Brief* at 5-7.

SSR 99-2p lists a number of symptoms associated with CFS, including, but not limited to "impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;" as well as sore throat; tender cervical or axillary lymph nodes; muscle pain; multi-joint pain without joint swelling or redness; headaches of a new type, pattern, or severity; unrefreshing sleep; and postexertional malaise lasting more than 24 hours. *Id.*

Contrary to Plaintiff's argument, the ALJ properly considered limitations created by CFS, acknowledging the condition as a severe impairment at Step Two of his analysis (Tr. 23(I)). Insofar as Plaintiff's claim can be construed to also dispute the *ultimate* finding that CFS did not create disabling limitations, substantial evidence supports the ALJ's conclusion that CFS, while present, did not render Plaintiff disabled. The fact that the ALJ acknowledged the presence of CFS and fibromyagia does not in and of itself imply disability. *Potts v. Secretary of Health and Human Services,* 1 F.3d 1241, 1993 WL 303363, 6 (6th Cir. 1993).

As noted by the ALJ, Plaintiff continued to engage in regular activities inconsistent with her allegations of disability, including housework, reading, walking her dog, composing newsletters for her garden club, and socializing (Tr. 23(G-H)). Although Plaintiff testified that her condition affected her ability to concentrate, she reported in February, 2003 that she had recently drafted a landscape design for her subdivision's entrance and frequently organized garden club lectures (Tr. 96). Further, the fact that the ALJ cited daily activities to demonstrate non-disability is particularly appropriate given the fact that Plaintiff

experienced CFS and fibromyalgia. *Boardman v. Prudential Ins. Co. of America,* 337 F.3d 9, 17 (1st Cir. 2003) states that "[w]hile the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, *the physical limitations imposed by the symptoms* of such illnesses do lend themselves to objective analysis." (emphasis added).

Likewise, the ALJ's rejection of Dr. Johnson's 2005 opinion that Plaintiff was disabled as of July, 2002 does not present grounds for remand. While *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7)(6th Cir. 1991) holds that treating physicians' uncontradicted opinions are entitled to "complete deference," Dr. Johnson's 2005 disability pronouncement stands at odds with other substantial portions of other record evidence, including the above-cited activities. Although Johnson deemed Plaintiff completely disabled by July, 2002, Plaintiff told her physical therapist in November, 2002 that she had been "too busy" to follow through with a home exercise program (Tr. 210). In February, 2003, Plaintiff stated that her physician recommended she not work *"if [she] didn't have to,"* in contrast to Johnson's 2005 indication that she was *precluded* from her former job (Tr. 97). (emphasis added)  While pursuant to *Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir.1967), the ability to perform routine tasks intermittently in spite of great discomfort does not necessarily indicate an ability to engage in substantial gainful activity, the ALJ properly used Plaintiff's admitted activities, along with other portions of the record, as a basis to reject Dr. Johnson's opinion.

Further, Dr. Johnson's 2005 statement stands at odds with her own treatment notes.

Although the physician supported her 2005 opinion by citing July 11, 2002 records, notes from the same examination indicate that Plaintiff was "[s]till quite active in maintaining her home" (Tr. 224). In December, 2002, Johnson was informed that Plaintiff's condition had improved 70 to 80 percent after undergoing physical therapy (Tr. 207). While deference to the treater's findings is the rule, Sixth Circuit case law does not go so far as to require the ALJ to adopt a medical opinion which is contradicted by substantial portions of the record. *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 (6th Cir. 2004).[2]

**B. Credibility**

Plaintiff also contends that the ALJ abused his discretion by a relying on isolated comments by treating sources to justify his non-disability finding while ignoring the great weight of evidence supporting the opposite conclusion. *Brief* at 7-9. Citing *Walston, supra,* 381 F.2d at 586, Plaintiff also submits that the ALJ improperly used her daily activities to discount her allegations of disability. *Brief* at 9-12.

In attacking the ALJ's analysis, Plaintiff states correctly that an administrative decision cannot stand on its reliance on small portions of the record which contradict the great weight of evidence, amounting to a distortion of that record. The Sixth Circuit has cautioned against this approach, holding that "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler,* 745 F.2d

---

[2]In addition, the ultimate legal conclusion as to whether a plaintiff is disabled or unable to work is reserved to the Commissioner, not the medical treating sources. SSR 96-8p; 20 C.F.R. §404.1527(e)(1)

383, 388 (6th Cir.).   While Plaintiff's argument amounts to a correct statement of the law, it is inapplicable to the present case.

First, although Plaintiff characterizes the administrative decision as a pastiche of isolated facts and inferences made in the absence of information, ample evidence found throughout the record supports the ALJ rejection of Plaintiff's allegations of disability. Aside from Plaintiff's activities cited in section A. which support a non-disability finding, the ALJ permissively discounted her hearing testimony that she could no longer concentrate well enough to hold a job.  An abundance of evidence, drawn primarily from Plaintiff's own admissions, supports his credibility determination.  Plaintiff testified that she lacked the presence of mind to perform her former work as an office clerk but admitted that she regularly made online purchases of clothing and gifts and took a briefcase full of paperwork to garden club meetings where she organized lectures (Tr. 94-95).   Plaintiff quit work in January, 1997, alleging disability from that point forward, but did not apply for benefits until December, 2002 (Tr. 41-43).  Further, treatment notes from January, 2001 state that her condition was "manageable" (Tr. 229). The latitude courts generally cede to an ALJ's credibility determinations is appropriate in the present case.  *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993).

### C. Rule 201.14

Finally,  Plaintiff disputes the ALJ's finding that she could perform her past relevant work as an office clerk, arguing instead that at most, she retained the ability to perform unskilled work at the sedentary level of exertion.  *Brief* at 12-14.  Plaintiff,  54 at the time of

the administrative decision, points out that under the Medical-Vocational Guidelines, her lack of transferrable skills combined with the ability to perform only sedentary work mandates a disability finding. *Id.*

Pursuant to 20 C.F.R., Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.14, a person "restricted to sedentary work who is age fifty to fifty-four, and whose education does not permit direct entry into skilled work, must be found disabled unless he has acquired transferable skills as a result of his past work." *Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 776 (6th Cir. 1987).

As discussed in Sections A. and B., the ALJ's determination that Plaintiff retains the concentrational abilities to perform her past relevant work stands well-supported by substantial evidence.[3] Further, although Plaintiff faults the ALJ for failing to pose a hypothetical question containing her limitations to the VE, the use of a VE is not required to reach a Step Four determination and is thus not fatal to the administrative decision.[4]

---

[3] The Mental Residual Functional Capacity Assessment of March, 2003 states that Plaintiff retains the ability to perform "simple, unskilled tasks on a sustained basis" (Tr. 120). Assuming, *arguendo*, that the report could be interpreted to state that Plaintiff could perform *only* "unskilled tasks" (supporting the argument that she was incapable of performing her former semi-skilled job), Plaintiff's admitted activities, along with physical therapy and Dr. Johnson's treating notes, support a contrary finding.

[4] The ALJ is not required to pose a hypothetical question or even consult a VE in making a Step Four determination. "At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ. The Commissioner has noted that such experts are used to resolve complex vocational issues." *Mays v. Barnhart,* 78 Fed. Appx. 808, 813-814  (3rd Cir. 2003)(internal citations omitted).

This Court notes in closing that its conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize Plaintiff's limitations as a result of CFS and fibromyalgia. However, the overriding question in this case is whether those conditions prevented Plaintiff from performing her past relevant work. Substantial evidence supports the conclusion that they did not. Based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R.  Steven Whalen
R.  STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  October 30, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 30, 2006.

S/Gina Wilson
Judicial Assistant